UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

)
DISTRICT OF COLUMBIA,           )
                                )
          Plaintiff,            )
                                )
     v.                         )     Civil Action No. 12-01527 (ABJ)
                                )
DOUG WOLFIRE,                   )
                                )
          Defendant.            )
                                )

**MEMORANDUM OPINION**

Plaintiff District of Columbia filed this case on behalf of the District of Columbia Public Schools ("DCPS") and the Local Education Agency ("LEA"), seeking judicial review of an administrative due process hearing decision ("HOD"). The challenged HOD determined that plaintiff violated the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, when it failed to develop an IEP for J.W. – a student residing in the District of Columbia who has been identified as a student with disabilities. Defendant Doug Wolfire is the father of J.W. and appears as next of friend to his son.

The case was referred to Magistrate Judge Robinson for full case management pursuant to Federal Rule of Civil Procedure 72.3. *See* Sept. 17, 2012 Order Referring Case [Dkt. # 5]. The parties subsequently filed cross-motions for summary judgment, *see* Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") [Dkt. # 13]; Def.'s Mem. in Supp. of Def.'s Cross-Mot. for Summ. J. [Dkt. # 14], and Magistrate Judge Robinson issued a Report and Recommendation suggesting that defendant is entitled to summary judgment and upholding the HOD. *See* Sept. 6, 2013 Report and Recommendation ("Report") at 9 [Dkt. # 20]. Plaintiff filed timely written objections to the

report. Pl.'s Objections to Report ("Pl.'s Object.") [Dkt. # 22]. After careful review of the Report and Recommendation, plaintiff's objections, defendant's response to plaintiff's objections, and the Administrative Record, the Court will adopt the Magistrate Judge's report in its entirety. As a result, the Court will grant defendant's cross-motion for summary judgment and deny plaintiff's motion for summary judgment.[1]

## STATUTORY FRAMEWORK

The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education." 20 U.S.C. § 1400(d)(1)(A). To receive funding under the IDEA, school districts must adopt procedures to ensure appropriate educational placement of students with disabilities. *Id.* § 1413.

A central requirement of the IDEA is that the district in which a student with disabilities resides must offer that student a free appropriate public education ("FAPE"), *id.* § 1412(a), which entitles each student with a disability to a comprehensive plan, known as an individualized education program ("IEP"), that is designed to meet his or her specialized educational needs. *Id.* § 1414(d)(2)(A) ("At the beginning of each school year, each [state] shall have in effect, for each child with a disability in [its] jurisdiction, an individualized education program."). The IEP must be formulated in accordance with the terms of the IDEA and "should be reasonably calculated to

---

1 Like the Magistrate Judge, the Court will adopt the hearing officer's finding of undisputed facts in disposing of this case. *See* Report at 7 n.2. The facts most relevant to the disposition are that (1) J.W. is a resident of the District of Columbia; (2) J.W. is a child with multiple disabilities; (3) J.W.'s parents took steps "to assist [DCPS] in an eligibility determination and IEP process" for J.W.; (4) J.W. is parentally enrolled in a private school in the District; (5) DCPS determined that J.W. is eligible for special education; (6) J.W.'s parent's requested that DCPS develop an IEP for J.W.; and (7) DCPS declined the IEP request, stating that it is not obligated to provide J.W. with an IEP until he is enrolled in a DCPS school. *Id.*, quoting Ex. 1 to AR 2–3 [Dkt. # 10-1].

enable the child to achieve passing marks and advance from grade to grade." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 204 (1982).

When a student with disabilities is parentally placed in a private school, the LEA responsible for the district in which the student resides must continue to periodically evaluate the student's special education needs, either on its own initiative or at the request of the student's parents or teacher. *See* 20 U.S.C. § 1412(a)(3)(A); *District of Columbia v. Vinyard*, -- F. Supp. 2d --, No. 12–1604, 2013 WL 5302674, at *3 (D.D.C. Sept. 22, 2013). As a result, the LEA has a continuing responsibility to offer a FAPE to a student with disabilities that resides within its district regardless of whether that student is currently enrolled in a private school. Upon receipt of an offer of a FAPE, parents have two options: (1) accept the offer of a FAPE and enroll their student in the delegated school, or (2) keep their child in private school. *See* Ex. 2 to Pl.'s Object. at 6 [Dkt. # 22-2]. If the parents choose the latter option, any services provided to the student pursuant to the IDEA are governed by 20 U.S.C. § 1412(a)(10) and 34 C.F.R. §§ 300.130–300.144. "No parentally-placed private school child with a disability has an individual right to receive some or all of the special education and related services that the child would receive if enrolled in a public school." 34 C.F.R. § 300.137(a).

The IDEA provides parents of students with disabilities the opportunity to participate in the evaluation and placement process. 20 U.S.C. §§ 1414(e), 1415(b)(1). Parents who object to their child's "identification, evaluation, or educational placement" are entitled to an impartial due process hearing, *see id.* § 1415(b)(6), (f)(1)(A), at which they have a "right to be accompanied and advised by counsel" and a "right to present evidence and confront, cross-examine, and compel the attendance of witnesses." *Id.* § 1415(h). A qualified impartial hearing officer conducts the due process hearing, *id.* § 1415(f)(3)(A), and any "party aggrieved by the findings

3

and decision" of that officer may file a civil case in federal court challenging that decision. *Id.* § 1415(i)(2)(A). The district court has remedial authority under the IDEA and broad discretion to grant "such relief as the court determines is appropriate." *Id.* § 1415(i)(2)(C)(iii).

## STANDARD OF REVIEW

When a party objects to a magistrate judge's recommended disposition, the Court reviews the magistrate judge's recommendation *de novo*. Fed. R. Civ. P. 72(b)(3); *see also Smith v. District of Columbia*, 846 F. Supp. 2d 197, 198–200 (D.D.C. 2012); *D.D. ex rel. Davis v. District of Columbia*, 470 F. Supp. 2d 1, 1 (D.D.C. 2007). The Court may "accept, reject, or modify" the magistrate judge's recommendation. Fed. R. Civ. P. 72(b)(3).

When reviewing an administrative decision made under the IDEA, a district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). The party challenging the decision bears the burden of proof and "must at least take on the burden of persuading the court that the hearing officer was wrong." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005), quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1989). Although this Court must give "due weight" to the hearing officer's determinations, *Rowley*, 458 U.S. at 206, that decision receives less deference than conventional administrative decisions. *Kerkam*, 862 F.2d at 887.

## DISCUSSION

Plaintiff raises two objections to the Magistrate Judge's Report and Recommendation, which adopted the HOD determination that plaintiff must provide J.W. with an IEP in order to comply with the IDEA. First, plaintiff argues that the Magistrate Judge did not conduct a proper

statutory analysis because there is a separate statutory framework governing students with disabilities who are parentally placed in private schools that eliminates plaintiff's responsibility to develop an IEP for J.W. *See generally* Pl.'s Object. And second, plaintiff objects to the Magistrate Judge's conclusion that plaintiff's Spending Clause argument is not germane and therefore need not be addressed. *See generally id.* Neither objection has merit.

The separate statutory framework for children who are parentally placed in private school does not support plaintiff's theory that it is not obligated under the IDEA to develop an IEP for J.W. until he enrolls in a public school. *See Vinyard*, 2013 WL 5302674, at *6–10. The IDEA's basic rule is that the state must ensure that "[a] free appropriate public education is available to *all* children with disability residing in the State between the ages of 3 and 21." 20 U.S.C. § 1412(a)(1)(A) (emphasis added). To satisfy that obligation, the state must not only engage in "child find,"[2] *id.* § 1412(a)(3), but it must also reevaluate and offer a FAPE to "*each* child with a disability . . . if the [LEA] determines that the educational or related services needs . . . of the child warrant a reevaluation[,] or if the child's parents or teacher requests a reevaluation." *Id.* § 1414(a)(2); *see also Vinyard*, 2013 WL 5302674, at *6–10. Absent a statutory exception, the IDEA mandates that a LEA offer a FAPE to *all* students residing in its district.

Here, J.W. is undisputedly a child with a disability who resides in the District of Columbia, and he therefore falls within the IDEA's basic rule provision. As a result, when his parents requested that plaintiff reevaluate J.W. and develop on IEP for him, plaintiff was

---

2    The "child find" provision of the IDEA imposes an obligation on a LEA to locate and evaluate all children with disabilities residing within its district. 20 U.S.C. § 1412(a)(3). This provision is not at issue in this case.

required to honor that request and make available a FAPE to J.W. regardless of his current parental enrollment in a private school.[3]

Plaintiff relies entirely on the separate statutory framework governing children who are parentally placed in private schools to assert that it is nonetheless not obligated to develop an IEP for J.W. But that separate statutory framework does not create an exception to the general rule that the LEA offer a FAPE to all students with disabilities that reside in its district. *See* 20 U.S.C. § 1412(a)(1); *Vinyard*, 2013 WL 5302674, at *7 ("[S]ection 1412(a)(10) . . . does not limit when the school district is required to propose a FAPE when requested by the parents."). Instead, as the plain language of section 1412(a)(10)(A)(i) indicates, that provision governs an LEA's responsibility to *provide* special education and related services to children with disabilities that are "enrolled in private schools by their parents." 20 U.S.C. § 1412(a)(10)(A) (emphases added) (explaining that "provision is made for the participation of those children in the program assisted or carried out under this subchapter by *providing* for such children special education and related services" and that "[s]uch services . . . *may be provided* to the children on the premises of private, including religious, schools, to the extent consistent with law"); *Vinyard*, 2013 WL 5302674, at *7 ("But section 1412(a)(10) merely governs the school district's obligations after the parents decline a FAPE offered by the school district . . . ."). Similarly, the plain language of 34 C.F.R. § 300.137 demonstrates that it is meant to limit the services the LEA must *provide*, not the obligation to evaluate or reevaluate and *offer* a FAPE to a student: "No parentally-placed private school child with a disability has an individual right to *receive* some or all of the special education and related services that the child would receive if enrolled in a public school." 34 C.F.R. § 300.137(a) (emphasis added); *see also id.* § 300.137(b)(1) (emphasis

---

3 The fact that J.W.'s parents requested that plaintiff develop an IEP for J.W. distinguishes this case from *D.P. v. Council Rock School District*, 482 Fed. App'x 669 (3d Cir. 2012).

added) ("Decisions about the services *that will be provided* . . . ."). Consequently, the only two provisions to which plaintiff directs this Court do not support plaintiff's position that it is under no obligation to offer a FAPE to J.W. simply because he is not currently (and never was) enrolled in a DCPS school. In fact, plaintiff's own Exhibit to its written objections supports the opposite conclusion:

> Question B-8: What are the LEA's responsibilities for reevaluations of parentally placed children?
>
> Answer: The LEA where the private elementary school or secondary school is located is responsible for conducting reevaluations of children with disabilities enrolled by their parents in the private elementary and secondary schools located in the LEA.

Ex. 2 to Pl.'s Object. at 7.

The separate statutory framework also does not create an exception to the requirement that plaintiff develop an IEP for J.W. As plaintiff itself notes, an IEP is defined as including "a 'statement of the special education and related services' to be provided to the child." Pl.'s Mot. at 8, quoting 20 U.S.C. § 1414(d). Put differently, an IEP is a written statement of the services that *will* be provided to the child should his or her parent(s) accept the offer of a FAPE: at the (re)evaluation stage, it puts a child's parent(s) on notice of what the FAPE would entail. Developing an IEP is therefore a necessary predicate to offering a FAPE, and it follows that the

obligation to offer a FAPE also includes an obligation to develop an IEP.[4] *Cf. Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 238–39 (2009) ("[W]hen a child requires special-education services, a school district's failure to propose an IEP of any kind is at least as serious a violation of its responsibilities under IDEA as a failure to provide an adequate IEP."); *Vinyard*, 2013 WL 5302674, at *7–9, citing *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 772 (M.D. Pa. 2012). So, as there is no requirement that a child be currently enrolled in a public school to be entitled to a FAPE offer, similarly there is no requirement that the child be currently enrolled in a public school in order to trigger the LEA's obligation to develop an IEP for that child. *See Woods v. Northport Pub. Sch.*, 487 Fed. App'x 968, 979–80 (6th Cir. 2012), quoting *James ex rel. James v. Upper Arlington City Sch. Dist.*, 228 F.3d 764, 768 (6th Cir. 2000) ("To hold otherwise would allow the school to slough off any response to its duty until the parents either performed the futile act of enrolling their son for one day and then withdrawing him as soon as the IEP was complete, or, worse, leaving the child in an arguably inadequate program for a year just to re-establish his legal rights."); *District of Columbia v. Abramson*, 493 F. Supp. 2d 80, 85 (D.D.C. 2007), quoting Hr'g Officer Decision at 8 (affirming the HOD, which found that "[t]he LEA is still required to offer a FAPE to any resident when there is a parent request for the

---

4   The fact that the U.S. Department of Education has stated that a "public agency is not required to develop an IEP when the parent refuses to consent to the initial provision of special education and related services" does not alter the conclusion that plaintiff must develop an IEP for J.W. *Subpart D—Evaluations, Eligibility Determinations, Individual Education Programs, and Educational Placements*, USDOE, http://idea.ed.gov/explore/view/p/,root,regs,preamble2, prepart2,D (last visited Jan. 15, 2014). The USDOE quote refers to situations where a parent manifests his or her intent to deny consent for the actual provision of special education and related services to the child; it does not relate to a situation – like the one in this case – where a parent consents to the development of a FAPE offer and requests additional information regarding what that offer will include while reserving the judgment on whether the FAPE offer will ultimately be accepted. *See Vinyard*, 2013 WL 5302674, at *9 (explaining that "the relevant inquiry is whether the parents expressed their intent to maintain the child's private school enrollment *after* the school district offers a FAPE").

student to be evaluated" and that offering a FAPE includes, among other things, "determining eligibility [for services, and] developing an IEP if the student is eligible"); *see also Vinyard*, 2013 WL 5302674, at *8–9 (collecting cases).

This conclusion is consistent with the statutory framework that governs parentally placed private school students.[5] As plaintiff's written objections indicate, its arguments focus on the "school system's responsibility to *provide* 'special education and related services,' which comprise both a FAPE and an IEP." Pl.'s Object. at 13 (emphasis added). But merely developing an IEP to inform a child's parent(s) about the services that could be offered in an effort to provide that student with a FAPE is not the same thing as requiring the LEA to actually provide the services described in the IEP. As a result, the development of an IEP does not implicate the limitations of section 1412(a)(10) or section 300.147(a), and there is no statutory basis to require that the child enroll in a public school before the IEP is developed.[6] *See Vinyard*, 2013 WL 5302674, at *7–8. Plaintiff therefore has not met its burden to establish that the HOD was wrong and that, under the IDEA, it is not obligated to develop an IEP for J.W.[7]

---

[5] Because the separate statutory framework governing parentally placed private school students is irrelevant to this case, it follows that the statutory provision governing children who are placed in private schools by a LEA also has no bearing on the inquiry here. The Court therefore rejects plaintiff's argument that relies on the language in the provision dealing with students who are placed in private school by a LEA. *See* Pl.'s Object. at 13 n.6.

[6] Because this case does not involve a dispute over whether services must be provided while J.W. remains enrolled in a private school and instead focuses on plaintiff's ongoing obligation to make a FAPE available to J.W., the cases relied on by plaintiff – *Board of Education v. Johnson*, 543 F. Supp. 2d 351 (D. Del. 2008), and *D.L. ex rel. K.L. v. Baltimore Board of School Commissioners*, 706 F.3d 256 (4th Cir. 2013) – offer no guidance here.

[7] Plaintiff argues that 34 C.F.R. § 300.148, which governs tuition reimbursement after a denial of a FAPE, supports its theory that it need not provide J.W. with an IEP until he enrolls in a public school. Pl.'s Object. at 17–18. But this argument fails for the same reason as plaintiff's main point: it focuses on the District's responsibility to *provide* a FAPE, instead of focusing on what is actually at issue here – the District's obligation to *offer* a FAPE.

Plaintiff's Spending Clause argument does not warrant a contrary conclusion. As mentioned above, the IDEA creates a basic requirement that a LEA offer a FAPE to all children with disabilities residing in the LEA's district. There is no exception to this requirement simply because a child is currently enrolled in a private school. Thus, plaintiff has not raised a valid Spending Clause concern because Congress has unambiguously required plaintiff to offer a FAPE – which includes the development of an IEP – to J.W. because his parents have requested a reevaluation, he is a resident of the District of Columbia, and he is a student with a disability.

## CONCLUSION

Based on the Court's review of the Administrative Record, the Magistrate Judge's Report and Recommendation, plaintiff's objections, and defendant's response to these objections, the Court will adopt the Magistrate Judge's Report and Recommendation. The Court will therefore deny plaintiff's motion for summary judgment and grant defendant's cross-motion for summary judgment. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: January 16, 2014